Good morning and may it please the court. My name is Dan Donovan. I'm from Great Falls, Montana. I represent the defendant on appeal, Joshua Bestwina. Now the primary issue we've And the government has repeatedly asserted that you can't consider this now, you have to have a hearing in the district court. That the trial counsel has to be able to be asked and answer, well, why did he do this? Why did he do that? Why didn't he do this? But we contend, as each of our points raised, we do not need a hearing, that there's no tactical reason that can be given by trial counsel, by the government, or by anyone else. The only possible need for a hearing would have been to the argument that trial counsel failed to investigate the case and present witnesses to challenge the credibility of the cooperating co-conspirators. And that question is answered because there actually was a hearing on a motion for a new trial. And the reason for that hearing, one of those conspirators wrote a letter after the trial to his girlfriend that came up to the attention of the probation officer and then to the court. And a hearing was held. And essentially, Judge Malloy ruled that, well, they didn't even have the letter. The letter was no longer in existence, even though three people testified that they saw it. And that was not newly discovered evidence that would justify a new trial. But what's important about that hearing is two other factors came out during the new trial hearing that indicate that important information should have been discovered by trial counsel before trial. And first, before he was arrested, this co-conspirator named Minnie Whitehorses, he threatened that if he was ever caught, he would tend to blame on my client, Mr. Besswina. And the second important factor is after he was arrested, Minnie Whitehorses told the same person he wrote the letter to after the trial that he had already lied to the investigators about the quantity of drugs relating to my, attributed to my client, Mr. Besswina. And you'll see in the transcript of the new trial hearing that Judge Malloy repeatedly chastised the trial lawyer for failing to adequately investigate and find these witnesses prior to the trial and basically ruled, I think, that there is no excuse for that. One other important fact that came out during the motion for new trial is the individual who testified that the cooperating witness threatened to tend to blame on my client. His name was Joshua or Joseph Stewart. The transcript uses both for its names. But Mr. Stewart actually was at the trial. He was there at the beginning of the trial. And he apparently was making a face at one of the witnesses or something. He hadn't been excluded from the courtroom. And he was actually, trial counsel didn't know who he was. And Judge Malloy instructed trial counsel to essentially kick him out of the courthouse and tell him not to come back. So trial counsel basically threw one of his important witnesses out of the courthouse. And that's why he never testified. The second thing I wanted to cover here is we don't need a hearing to prove that trial counsel did not realize that sharing a methamphetamine is the same as distributing methamphetamine. It's very clear from the law and the case law that no money has to change hands. It doesn't have to be a quote-unquote sale. But the sharing is the same equal to distribution. And that was basically the major part of the defense theory presented by the trial counsel, that Mr. Besswina couldn't have been, he was a drug dealer. I mean, he was a drug user. He was an addict. But he couldn't have been a drug dealer, a drug seller, because he didn't get money. He didn't sell drugs. And this argument was repeated several times to a jury during the closing argument of defense counsel, even after the prosecutor pointed out to the jury in the government's closing that you don't have to have money change hands for it to be a distribution, that sharing is equal to a distribution. And trial counsel said, and I quote, they didn't prove he had any money. Where is the profit? Quote, quote, he doesn't have any money because he wasn't a drug dealer. Quote, no user testified I bought this much off him at this time. Quote, if he's a drug dealer, we should have had somebody come up there to say, yeah, I bought drugs off of him. Well, there were witnesses, more than one witness that testified that he or she shared drugs with my client, Mr. Besswina. And Mr. Besswina even admitted that when he took the stand to testify himself. And that last point is one of my arguments of IAC essentially that it was ineffective preparing my client to testify at the trial. There's an old joke that I used to hear around the courthouse that a bench trial is a slow guilty plea. Well, here the trial counsel turned a jury trial into a slow guilty plea. And why is that? Because he called the defendant, Mr. Besswina, to testify. Yeah, I'm a drug user. Yeah, the drugs are always around. And I'm sharing drugs with everybody else, but I'm just not selling it. I'm not making money out of the deal. And this clearly was ineffective. And it really amounted to Mr. Besswina pleading guilty to count to distribution of methamphetamine. Well, you know, there is another view. And the problem is, you know, we don't know how good that view is without hearing from the defense lawyer. And you could postulate something like this. You know, the evidence was strong enough that the lawyer concluded that he's going to get convicted. So the best he could do was to, you know, get him convicted of a lesser charge. And to show that he's a user instead of a professional dealer might help that kind of a, I'll call it a defense. In fact, it works in part because, right, he was in effect acquitted of the quantity charge on the distribution. Now, if he'd been acquitted of the quantity charge and the conspiracy, he would have been subject to a much lesser sentence. So to that extent, if the defense worked, it would have been, I think, quite effective in this situation. Don't you think? Yes. And I probably wouldn't be here either. But also the defense works in part to count three because the government really didn't present any evidence on marijuana or marijuana quantity. The jury found Mr. Best. We know I'm talking about count, you know, the the other distribution count. Now he was right. He was not found guilty of the higher quantity charge. Right. All right. So, I mean, I think that you can attribute that to the efforts of the attorney, can't you? Well, you can. But I know what I'm saying is it's not an open and shut case that he was ineffective, is it? Well, I don't I don't think it ever is. But I think there's enough points raised here where he was ineffective. No, but we don't know the other side of the story as to why he you know, why the lawyer did this. He may have had a good reason, a good tactical reason. I mean, that that brings another another point. The lawyer made a rule. Twenty nine motion to count three, the distribution of marijuana, but not to count one or two. And my argument is how could that possibly be a tactical decision there? And also there was a ton of evidence connecting him to the conspiracy. I mean, you had Brown testifying directly and rather powerfully to his involvement. You had I don't know how she pronounces her nickname, but Nastasia, whatever, testifying. She, among other things, was sent to Las Vegas with twelve thousand bucks from him to buy methamphetamine. You had testimony from other people about how much they bought from him over the course of several months. I mean, there's a ton of evidence. So what likelihood is there that a full twenty nine motion would have had a snowball's chance in the world of succeeding? Well, it almost always never does. But at least it allows the appeal to address the sufficiency issue. And in this case. Well, I'm just saying an appeal based on sufficiency would go zip. Well, but in this particular case, there's also sufficiency dealing with the quantity of drugs. And obviously, with respect to count two, the jury did not find that Mr. Vaswina distributed more than 500 grams of methamphetamine, but they did make that finding with respect to count one, the conspiracy, which brings me to maybe my most important point is the Court's use of the conspiracy contemplated this amount in the jury verdict form. Maybe you ought to explain why, assuming that that was plainly erroneous to do that. Okay. It matters. Well, under Ninth Circuit law, the Banuelos and the Lococo cases I've cited, at least the way I interpret them, the government has to prove beyond a reasonable doubt that the quantity of drugs is a substantial amount.  It's not the quantity of drug, but the quantity of drug is a substantial amount. So assuming it was plainly erroneous to pose the question in that way, why does it matter? That is, why did it affect his substantial rights? What – why is it ineffective? Or why is it – How can you say you should get rid of the sentence because of it? That's what I thought you were arguing. Okay. Well, I may be misunderstanding the question, but – Well, gee, I would think that your strongest argument is that the judge asked the wrong question. That is, what was the drug quantity contemplated by the jury – excuse me, contemplated by the conspiracy when he should have asked the question? Was that within the scope of your client's agreement and or was it reasonably foreseeable to him that the conspiracy would distribute at least 500 grams? So assuming that that's clearly – plainly erroneous, my question to you is why should – why did it matter? Why should – why is it – why did it affect substantial rights such that we should recognize the error given what I just said a minute ago, that is, that there is considerable evidence that he dealt more than 500 grams of meth? Because the jury made a finding to what the conspiracy contemplated, not to what Mr. Besswina, the defendant – I know that, Mr. Donovan. I'm trying to focus the question. I'm asking you to assume that the question posed to the jury was flat-out wrong and obviously wrong, and we're in plain error world because there was no objection. So then the question is, did that affect his right? Did it matter? Did it affect substantial rights? And was it an error that we should now notice given the fact that the evidence was significant, showing that he actually distributed way more than 500 grams? Well, the evidence may indicate that, but the jury actually found on count two that he didn't distribute more than 500 grams, and that's probably the critical fact to at least try to answer your question, that the jury found that the conspiracy contemplated a greater amount. Yes, and he was part of the conspiracy. Well, yes, but they – my argument is they have to make a finding that it was either within the scope of his agreement with the conspirators or, I'm getting back in a circle here, it was reasonably foreseeable to him, and that maybe it wouldn't be an issue if the jury had found that there was more than 500-gram quantity for his own distribution. You don't have to find that. I'm still trying to focus you on the other prongs of plain error analysis. Are you giving up – are you abandoning Schiff on those? No, I'm still arguing that it's plain error that – Okay. But if it's plain and it was an error, you still have to show that it affected substantial rights and that it's the kind of error that we should notice, that we should take account of and therefore reverse on account of. Well – Why is the latter – why are the latter two prongs met? It affected substantial rights because the jury found proof beyond reasonable doubt without properly being instructed, exposing my client to a mandatory minimum 10 years. Okay. If that's an error, then we don't – in my opinion, we don't even need a new trial. Well, you can send it back for resentencing, at least on count one, with – without the mandatory minimum 10. And I believe that the mandatory minimum 5 would apply. Okay. And also, you know from the record at sentencing, even though trial counsel ignored whatever the mandatory minimum nature of the case, that Judge Malloy repeatedly said how frustrated he was that he couldn't impose a sentence less than 10 years. So – Well, who prepared this verdict for him? As far as I can tell from the record, it wasn't submitted by the government or the defense. It was prepared by the court. And I've tried to find it – this language in the Ninth Circuit jury instructions, both in the book and online, and I don't find it. I can't find any case law that supports it. And the government didn't come in with any case law either. So I don't know where Judge Malloy got that or why he uses it. Anyway, I'd like to remain – reserve the 10 seconds I have left for rebuttal. Good morning, Your Honors. May it please the Court. My name is Tim Roscoe. I'm an assistant U.S. attorney for the District of Montana. I work out of our Missoula branch office. And although I was not trial counsel on this case, I took over for a colleague and handled the motion for a new trial as well as the sentencing and the appeal in this case.  And the question is, did it affect substantial rights and should we notice the error? And it obviously had the consequence of kicking his sentence, the floor of his sentence from 5 years to 10. So why isn't that in and of itself enough? To answer your question, does it affect substantial rights and should we notice the error? If it affects substantial rights, it would be our assertion that the answer to that question is no, it does not. And the reason is that I would base that on this Court's decision in the Rosales case, 516F3rd749, which I erroneously did not bring to light in our brief. But what that case basically says is that for the mandatory minimum penalties to apply, as you know, the evidence has to be sufficient to support the jury's verdict that 500 grams in this case fell within the scope of the agreement or were reasonably foreseeable. But that's if the evidence is sufficient to support that finding. The jury was asked to make a finding about weight in the conspiracy. And just very briefly, to clear the record on that, that verdict form is actually presented by the government in this case. Well, it's really wrong. I think that's right, Your Honor. And I can't figure out why we use that. We've been using it since I got there in 2005. I hope you stopped. We did as of at the end of last week, Your Honor. And as I say, I can't, in light of this case, I can't figure out why we were using that. But it's kind of buried in our joint proposed jury instructions, which is why counsel probably couldn't find it. But it was not so much the district court's fault as it was ours for presenting that in the first place. Okay. Well, that's super. But, I mean, the real question is, the one I pose to you, why doesn't it matter because it kicked him from a floor of 5 years to a floor of 10? Because if the evidence is sufficient to support their verdict in this case under Rosales, then it wouldn't affect his substantial rights. Why? Okay. If the evidence is not the verdict form. Not the verdict form. But if the evidence is sufficient to support the verdict, in essence, to support their finding that triggered the district court's imposition of the 10-year sentence. If the evidence is there, it underpins that. Well, yeah. But here's the problem, isn't it? I mean, the verdict was just that he was member of a conspiracy to distribute methamphetamine. Right? Yes, that is correct. Okay. So if that's all there is, then there is no finding beyond a reasonable doubt that he that it was appropriate to attribute 500 grams to him. Well, in order to find him guilty in the first place, they have to say there was an agreement between two or more people and he was a member of it. There's a number of conspiracies. There's no question about that. And I think there was plenty of evidence to show that. But that then leaves hanging the question of quantity. And so then it's our assertion that in this case, and it may be fact-specific to this case, when we then ask the jury the question that we all sort of agree we're not satisfied with this morning, does the conspiracy contemplate that weight? In this case, it doesn't affect his substantial rights because the conspiracy clearly involved that much. And there were only about. No, but involved here is not the question. Right. Right. But that's almost like, you know, the verdict for him contemplate. And you see, the problem I have is maybe there is sufficient evidence to support a verdict that had been properly worded, which would say, you know, was it foreseeable by the defendant? Yes. But the jury was not asked to decide that. And the problem is, you see, it's the same quantity that was involved in the distribution count. Right. It is. And with that, you know, the jury found, no, you see, he didn't distribute it. So there's some basis to question whether or not, you know, it was foreseen by him, isn't there? Oh, yeah. Whether the evidence was sufficient. I mean, your position would be evidence was sufficient to support quantity determination on the distribution count, isn't it? But the jury disagreed with you. No, I guess I would say that the difference there, Judge Tshima, is that the facts were that when the source from Washington brought methamphetamine to Montana, at least in the first instance, he brought a half a pound. They took that directly to the defendant's house, cut it up at the defendant's house, and the defendant got an ounce. And then Kyle Brown's testimony describes that that's basically the M.O. for the conspiracy from then on, except that the weight increases to a pound per month over the course of the next year. And so that pound is brought into town, and Josh Bestwina receives, according to the testimony of Kyle Brown, an ounce every other day. And so I can see where the jury would say, well, clearly he was involved in the conspiracy, and clearly the conspiracy involved more than 500 grams. But Josh Bestwina didn't take more than 500 himself for resale. Now, obviously we would disagree with that, but I can see why the jury would make that finding and they would parse out the weight issue differently between the peer distribution count and the conspiracy count. And that's what I'm inarticulately trying to suggest Your Honors do, is go to the facts of this case, that although the verdict form may be plainly erroneous on its face, it doesn't affect his substantial rights because it's only Kyle Brown, Josh Bestwina, J.C. Many White Horses, Nastasia Shannon, and maybe one or two other kind of bit players in the Missoula aspect of this conspiracy. But Josh's house serves as the distribution point. There are people coming and going from Josh's house. The weight is being brought from the source to Josh's house. He's renting hotel rooms for the source. So the jury could easily say, he knows, this falls within the scope of his agreement in this case because of the facts that were introduced at the trial, separate and apart from the fact that we asked the wrong question about what the conspiracy contemplates versus what's within the scope of his agreement or reasonably foreseeable to him. But on the facts of this case, the fact that the jury said you're guilty of the conspiracy, we assert is enough for them to say it falls within the scope of your agreement that it involves more than 500 grams and or it's reasonably foreseeable because of the limited number of players in Missoula and the integral role that you play with those other limited players. Well, there's a lot of speculation in there as well. But I'm just curious, how long has this forum been used? Judge Gregerson, I've been there since October of 2005, and it's been there in every trial that I've used, and I got it from somebody in the office. And I was asking that same question from some of my colleagues when I was getting ready for this argument because I said I'm afraid we're going to have a problem with this, and I'm assuming this is the same forum that we're using in all of the divisions of the court. That may not be correct, but it certainly is the forum. In fact, I know that apparently one of my colleagues said we use a different forum in front of Judge Haddon up in the Great Falls Division, but we've been using this one. We've been presenting this one to Judge Malloy since I got there in October of 2005, and I don't know for how long before that. Well, you see, a lot of these problems arose before Montana had a federal defender's system. Because I spent a lot of time in that Missoula courthouse. While I was doing this job, I was up there. Because before Judge Malloy got there, there was no judge that was spending any time there in Missoula. So there were a lot of things going on. But anyway. Well, we clearly need to do better in terms of the form that we present to the court in order to more accurately capture the state of the law. It remains our position that in this case, based on the facts in this case and the nature of the conspiracy in this case, that it did not affect Mr. Bestwina's substantial rights. Spend a minute, would you, on the new trial motion? Certainly. I'm just talking about the last two factors, you know. Right? Yes, Judge Tsushima. And those are the two that we believe are most clearly cut in our favor, that it's not merely cumulative or impeaching evidence being one of those two, and that the result, if there was a retrial, would probably be an acquittal. And I think we believe the evidence is both cumulative and impeaching, but it's certainly just impeaching. All that it would be is an opportunity to ask J.C. Manny Whitehorse, as if there were a second trial, about this letter. Did you actually write it? What did you actually say in it? And did that mean that you actually perjured yourself during your trial? And I think there's, again, a lot of speculation about what trial counsel did and did not do. But even Judge Malloy found that the testimony from Ms. Lemire about the letter was not credible and that it was biased. He said it was not persuasive and that she was biased. He was cross-examined, he meaning Manny Whitehorse, right, quite at length about his – including about his credibility. Yes, and specifically about a prior state court proceeding where he perjured himself. And he acknowledged that on the stand, and the defense got a jury instruction that says, Members of the jury, J.C. Manny Whitehorse is a perjurer, and you're allowed to consider that when you weigh his testimony here. And so there's one plausible explanation that, armed with that sort of a jury instruction, defense counsel doesn't want to bring in a Ms. Lemire, who the judge later finds to be biased and non-persuasive, and present her as another witness to attack Mr. Manny Whitehorse's credibility when you have something as powerful in your arsenal as a jury instruction that specifically says this witness perjured himself during a prior proceeding. Not only that, but in terms of whether or not the result would be an acquittal, the testimony of Kyle Brown being the leader of the conspiracy in Missoula is really the linchpin of the government's case, as well as Ms. Shannon, whose only connection to these individuals was through her involvement in the conspiracy. She didn't have these prior existing relationships that might lead the jury to believe that she was less likely to be believed. If we were forced to try the case again, it's not unreasonable to assume that the government might just cut Mr. Manny Whitehorse's loose and say, you're not worth it. In many respects, he was in a similar position to Mr. Bestwina, getting drugs that his brother Kyle Brown brought in from Washington and selling them. So it's nice to have as many members of the conspiracy as you can, but if we determine that he's either not going to tell the truth, of course we wouldn't put him on, or if it's just too suspect and it undermines his credibility with the jury to such an extent, we may not call him at all, and then you're left with not an equally strong, but certainly a case that's still strong enough to convict Mr. Bestwina for his conduct in this case. If there are no further questions, I'll cede the remainder of my time. Thank you very much. I've got 10 seconds. Give me 11, but one quick statement. I think it was agreed by the prosecution and the defense that quantity and drugs would come into Missoula from Watts State of Washington, and the drug supplier would rent a motel room, and my client would basically pay the bill in exchange for a gram of methamphetamine. But they never showed that my client knew, well, there was half a pound there at that motel, or he wasn't otherwise involved except in using his credit card, apparently, to get to pay for the motel room and get himself some methamphetamine to use. So I think there is a question here, particularly with the verdict as it counts to not more than 500 grams as to how much my client distributed and what he knew about the distribution of the conspiracy and whether it was foreseeable to him other than what he was doing. That's all I have. Thank you. Thank you. This matter is submitted. We come to the last case on today's calendar, Patton v. Target Corporation. Thank you.
judges: Pregerson, Rymer, Tashima